1  TIMOTHY J. HATCH, SBN 165369
   THatch@gibsondunn.com
2  JAMES L. ZELENAY, JR., SBN 237339
   JZelenay@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
4  Los Angeles, California 90071-3197
   Telephone:   (213) 229-7000
5  Facsimile:   (213) 229-7520

6  CHRISTY JOSEPH, SBN 136785
   cjoseph@swlaw.com
7  BRIAN MILLS, SBN 216078
   bmills@swlaw.com
8  SNELL & WILMER LLP
   600 Anton Boulevard, Suite 1400
9  Costa Mesa, California 92626-7689
   Telephone:   (714) 427-7000
10 Facsimile:   (714) 427-7799

11 Attorneys for Defendant,
   APOLLO GROUP, INC. d/b/a UNIVERSITY OF
12 PHOENIX

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, THE STATE OF CALIFORNIA ex rel. STEPHEN LEE BRODALE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>APOLLO GROUP, INC., a California Corporation, d/b/a/ University of Phoenix et al.,<br><br>　　　　　　Defendants. | Case No. 08-CV-1399 JM WMC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT APOLLO GROUP, INC. d/b/a UNIVERSITY OF PHOENIX'S MOTION TO DISMISS THE FOURTH AND FIFTH CAUSES OF ACTION OF THE COMPLAINT OF STEPHEN LEE BRODALE**<br><br>[Notice of Motion and Motion and Request for Judicial Notice filed concurrently herewith]<br><br>Date:　　　October 23, 2009<br>Time:　　　1:30 p.m.<br>Place:　　　Courtroom 16, 5th Floor<br>Judge:　　　The Honorable Jeffrey T. Miller |

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ....................................................... 1

II. FACTUAL BACKGROUND .................................................................................................. 3

    A. The University of Phoenix ........................................................................................... 3

    B. Stephen Lee Brodale ..................................................................................................... 3

    C. False Claims Act Allegations ....................................................................................... 4

    D. Procedural History ....................................................................................................... 4

    E. The *Hendow* Action ..................................................................................................... 5

III. LEGAL STANDARD .............................................................................................................. 5

IV. ARGUMENT ........................................................................................................................... 6

    A. Brodale's FCA Claims Are Barred By The FCA's First-To-File Provision ................................................................................................................... 6

    B. Brodale's FCA Claims Should Be Dismissed Under Rules 9(b) And 12(b)(6) ............................................................................................................. 10

    C. Brodale Failed To Comply With The FCA's Procedural Requirements ............................................................................................................. 13

V. CONCLUSION ...................................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) .................................................................... 6, 10, 12

*A-Z Int'l v. Phillips*,
    323 F.3d 1141 (9th Cir. 2003) ................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ......................................................................................................... 6, 13

*Bly-Magee v. California*,
    236 F.3d 1014 (9th Cir. 2001) ......................................................................... 2, 6, 11, 12, 13

*California ex rel. Grayson v. Pac. Bell Tel. Co.*,
    142 Cal. App. 4th 741 (2006) ................................................................................................. 7

*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.*,
    109 Cal. App. 4th 1668 (2003) ............................................................................................... 7

*Cleveland v. Deutsche Bank Nat'l Trust Co.*,
    No. 08-cv-0802 JM(NLS), 2009 U.S. Dist. LEXIS 7165 (S.D. Cal. Feb. 2, 2009) ............ 6, 11

*Doe v. Wal-Mart Stores, Inc.*,
    572 F.3d 677 (9th Cir. 2009) .................................................................................................. 6

*Erickson ex rel. United States v. American Inst. of Biological Scis.*,
    716 F. Supp. 908 (E.D. Va. 1989) ................................................................................... 13, 14

*Grynberg v. Koch Gateway Pipeline Co.*,
    390 F.3d 1276 (10th Cir. 2004) .......................................................................................... 7, 9

*In re Stac Elec. Sec. Litig.*,
    89 F.3d 1399 (9th Cir. 1996) ................................................................................................ 11

*Parks Sch. of Bus. v. Symington*,
    51 F.3d 1480 (9th Cir. 1995) .................................................................................................. 6

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
    806 F.2d 1393 (9th Cir. 1986) .............................................................................................. 11

*Stevedoring Servs. of Am., Inc. v. Eggert*,
    953 F.2d 552 (9th Cir. 1992) .................................................................................................. 5

*Tosco Corp. v. Communities for a Better Env't*,
    236 F.3d 495 (9th Cir. 2001) .................................................................................................. 5

*United States ex rel. McCoy v. Cal. Med. Rev., Inc.*,
    723 F. Supp. 1363 (N.D. Cal. 1989) ..................................................................................... 12

*United States ex rel. Atkins v. McInteer*,
    470 F.3d 1350 (11th Cir. 2006) ............................................................................................ 11

*United States ex rel. Bott v. Silicon Valley Colls.*,
    No. 06-15423, 262 Fed. Appx. 810, 2008 WL 59364 (9th Cir. Jan. 4, 2008) ...................... 10

*United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*,
    318 F.3d 214 (D.C. Cir. 2003) ................................................................................................ 9

**TABLE OF AUTHORITIES**   *[continued]*

Page(s)

*United States ex rel. Hendow v. University of Phoenix*,
 Case No. 03-0457-GEB-DAD (E.D. Cal., filed Mar. 7, 2003) .................................................. 5

*United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*,
 No. 96-1380, 1999 U.S. Dist. LEXIS 13036 (E.D. La. Aug. 20, 1999) ................................. 10

*United States ex rel. Lee v. SmithKline Beecham, Inc.*,
 245 F.3d 1048 (9th Cir. 2001) ........................................................................................... 11, 12

*United States ex rel. Lujan v. Hughes Aircraft Co.*,
 243 F.3d 1181 (9th Cir. 2001) ........................................................................................ 7, 9, 14

*United States ex rel. Pilon v. Martin Marietta Corp.*,
 60 F.3d 995 (2d Cir. 1995) ..................................................................................................... 14

*United States ex rel. St. John Lacorte v. Smithkline Beecham Clinical Labs.*,
 149 F.3d 227 (3d Cir. 1998) ..................................................................................................... 7

*United States ex rel. Summers v. LHC Group, Inc.*,
 No. 3:09-cv-277, 2009 U.S. Dist. LEXIS 48922 (M.D. Tenn. June 11, 2009) ............. 3, 13, 14

*Vess v. Ciba-Geigy Corp.*,
 317 F.3d 1097 (9th Cir. 2003) .......................................................................................... 6, 11

**Statutes**

20 U.S.C. § 1087kk, *et seq.* ............................................................................................................ 4
20 U.S.C. section 1001, *et seq.* ................................................................................................ 4, 10
31 U.S.C. § 3730(b)(2) ............................................................................................................ 2, 13
31 U.S.C. § 3730(b)(5) ......................................................................................................... 1, 6, 7
Ca. Ed. Code § 69431, *et seq.* ....................................................................................................... 4
Cal. Gov't Code § 12652(c)(10) ................................................................................................ 1, 7
Cal. Gov't Code § 12652(c)(2)-(3) ........................................................................................ 2, 13
Cal. Gov't Code § 12652(c)(4) ............................................................................................... 5, 14

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................................................................ 6

I.      INTRODUCTION AND SUMMARY OF ARGUMENT

Through this action, Plaintiff and Relator Stephen Lee Brodale ("Brodale") attempts to turn what is at most an employment discrimination matter, where he claims that he was harassed and discriminated against on account of his being male and heterosexual, into a case of "fraud" under the federal and state False Claims Acts (collectively, "FCA").  Brodale's FCA claims – asserted in the fourth and fifth causes of action of his Complaint – are without merit and should be dismissed for any one of three, independent reasons.[1]

First, Brodale's FCA claims should be dismissed under Rule 12(b)(1) of the Federal Rules of Civil Procedure because they are jurisdictionally barred by the FCA's "first-to-file" rule.  Under the first-to-file rule, no person other than the government may bring an FCA case that is a "related" action based on facts underlying an earlier-filed FCA case.  31 U.S.C. § 3730(b)(5); Cal. Gov't Code § 12652(c)(10).  The idea is that once the first *qui tam* action has been filed – ostensibly on behalf of the government (as Brodale attempts to do here) – the government has been placed on notice and no further actions need be filed to alert the government to the claims or otherwise protect the government's interests.  A second action needlessly consumes the courts' resources and possibly limits the recovery for the plaintiff – called a relator – in the first action.

In his complaint, Brodale asserts allegations that are already the subject of an earlier-filed case pending against the University of Phoenix ("University") in the United States District Court for the Eastern District of California.  In that case, *United States ex rel. Hendow v. University of Phoenix*, the relators allege – like Brodale does here – that the University committed fraud on the government through the submission of false claims for payment to the government.  In that case, like in this one, the relators allege that these false claims occurred in connection with student financial aid applications.  And in that case, like in this one, the relators allege that the false claims were caused, in part, by how employees at the University were compensated and due to directions given by supervisors to disregard potential students' qualifications.  Therefore, this is clearly a related action

---

[1]   Brodale's remaining claims should also be dismissed, pursuant to the parties' joint motion regarding arbitration.  *See* Docket No. 17.

based on the facts underlying the earlier-filed *Hendow* action, and Brodale's FCA claims should be dismissed under the FCA's first-to-file rule.

Second, Brodale's FCA claims should be dismissed under Rules 12(b)(6) and 9(b) because Brodale has not – and cannot – allege that the University actually submitted false claims in violation of the FCA.  Instead, Brodale asserts in wholly vague and conclusory fashion that the University somehow submitted false claims in connection with student financial aid applications because it committed violations of "the Higher Education Act" and the "provisions related to state Cal-Grants." Brodale, however, does not identify which among the thousands of laws found within these provisions the University allegedly violated.  This is insufficient under Rule 12(b)(6), let alone Rule 9(b).

Brodale's further vague and conclusory allegations regarding how unidentified "employees" at the University allegedly "encourage[d]" unnamed "students" to falsify unidentified financial aid documentation at unnamed locations during unidentified periods of time do not remedy this problem and save his complaint.  This is because Brodale does not supply any details, such as who exactly engaged in this conduct, what it consisted of, when and where it happened, or how this conduct took place.  In the absence of such allegations, Brodale fails to provide proper notice "of specific fraudulent conduct" against which the University must defend, as required by Rule 9(b).  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  Instead, the allegations presented in Brodale's complaint serve merely as a "pretext for discovery of unknown wrongs;" precisely the conduct Rule 9(b) seeks to deter.  *Id.* (quotations omitted).  Moreover, Brodale's allegations fail for another critical reason:  he does not allege any conduct that actually resulted in the submission of a "false" claim for payment to the government.

Third, Brodale's FCA claims should be dismissed under Rule 12(b)(6) because Brodale failed to satisfy the procedural filing requirements associated with FCA claims.  As the law makes clear, a *qui tam* relator must file his complaint under seal, and provide a copy of his complaint and a disclosure statement to the government prior to or at the time of filing the complaint.  31 U.S.C. § 3730(b)(2); Cal. Gov't Code § 12652(c)(2)-(3).  The penalty for failing to follow these rules is dismissal with prejudice as to the relator (but without prejudice as to the government).  *See, e.g.*,

*United States ex rel. Summers v. LHC Group, Inc.*, No. 3:09-cv-277, 2009 U.S. Dist. LEXIS 48922, at *14-16 (M.D. Tenn. June 11, 2009). Here, Brodale failed to follow these requirements. He did not originally file his complaint under seal, and he did not provide the government with a copy of his complaint or a disclosure statement prior to or at the time of filing this action. Accordingly, his FCA claims should be dismissed on these grounds as well.

## II.   FACTUAL BACKGROUND

### A.   The University of Phoenix

Founded in 1976, the University of Phoenix is the largest private university in the United States. The University's primary mission is to educate working adults to develop the knowledge and skills that will enable them to achieve their professional goals, improve the productivity of their organizations, and provide leadership and service to their communities. The University's adult learning model makes higher education more accessible, efficient, and relevant to the real world, as adult learners bring to the classroom organizational and personal experiences that enrich the learning process.

Accredited by the Higher Learning Commission of the North Central Association in 1978, the University offers both undergraduate and graduate programs in a variety of fields. The University currently enrolls over 400,000 degree seeking adult students at over 200 campuses throughout the world, as well as through its University of Phoenix Online campus.

The Apollo Group, Inc. is the University's parent organization. The other defendants to this action – Kim Savich, Kyan Flynn, Jennifer Brodie, and Matt Johnston (none of whom have been served) – are current or former employees of the University.

### B.   Stephen Lee Brodale

Stephen Lee Brodale was hired as a Director of Campus Financial Services at the University's San Diego campus in September 2004. Compl. ¶ 14. Brodale claims that sometime prior to September 2006, he began to encounter discrimination as a result of being male and heterosexual. *Id.* ¶¶ 15-16. Brodale claims that he was fired from the University on January 14, 2008. *Id.* ¶ 20.

### C. False Claims Act Allegations

Although his complaint focuses on allegations regarding purported discrimination and harassment, Brodale does include two FCA causes of action – in the fourth and fifth causes of action in his complaint. *See id.* ¶¶ 37-49. Brodale claims that the University somehow committed "fraud" on the federal and state governments, and submitted "false claims" for payment in connection with student financial aid requests. *Id.* ¶¶ 44-49. Brodale contends, without particularity or specificity, that these financial aid requests were "false or fraudulent" because the University allegedly submitted the claims "in violation of requirements set forth by the [Higher Education Act], 20 U.S.C. section 1001, *et seq.*," the "provisions related to state Cal-Grants (Ca. Ed. Code § 69431, *et seq.*)," "those provisions related to Federal Pell Grants . . . , Federal Perkins Loans . . . , and William D. Ford Federal Direct Loans," and "the *Needs Analysis* requirements of 20 U.S.C. § 1087kk, *et seq.*" *Id.* ¶¶ 46, 49.

Brodale further alleges that unnamed "employees" of the University "altered, changed, forged, and falsified" unidentified "student financial records" and "encouraged" unidentified "students to do the same." *Id.* ¶¶ 17, 38. *See also id.* ¶ 18. Brodale also contends that all of this purported misconduct stemmed from the "pressure" on University employees to enroll "unqualified" students because employees were allegedly paid "based on their enrollment activities," there were "internal enrollment quotas and sales promotions," and there was a "policy" "not to deny any student enrollment for any reason." *Id.* ¶¶ 17, 18(a), 18(c).

### D. Procedural History

On August 1, 2008, Brodale filed this action on behalf of himself as well as the United States and the State of California. Docket No. 1; Compl. ¶¶ 3, 13. Brodale's Complaint was not filed under seal, as required by the FCA. *See* Docket Nos. 1-4. Nor did Brodale provide the government a copy of his complaint and disclosure statement prior to or at the time of filing the case, which is also required by the FCA. *Id.* On October 30, 2008, the United States filed an *ex parte* application noting these facts, and requesting that its statutory time period for making a decision regarding intervention be extended. Docket No. 5. On that same day, the Court granted the request. Docket No. 6.

On May 13, 2009, the United States – after investigating Brodale's allegations – announced that it was not intervening, leaving Brodale to pursue this matter on his own. Docket No. 7.[2]

### E. The *Hendow* Action

In 2003, over five years before the instant action was filed, two relators filed a similar *qui tam* action against the University in the United States District Court for the Eastern District of California. *See* Request for Judicial Notice ("RJN") Ex. A (Complaint in *United States ex rel. Hendow v. University of Phoenix*, Case No. 03-0457-GEB-DAD (E.D. Cal., filed Mar. 7, 2003)); Ex. B (First Am. Compl. in *Hendow*); Ex. C (Sec. Am. Compl. in *Hendow*). The Complaint in *Hendow*, like the Complaint here, alleges that the University committed fraud on the government in violation of the FCA. RJN Ex. A ¶¶ 44-49. The Complaint in *Hendow*, like the Complaint here, alleges that this fraud related to student financial aid requests. *Id.* ¶ 1. And the Complaint in *Hendow*, like the Complaint here, alleges that the root of this alleged "fraud" was how the University compensated its enrollment counselors and the purported direction that the University gave to its employees to stop reviewing students' qualifications (*i.e.*, not deny any student enrollment for any reason). *Id.* ¶¶ 16-17, 38.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(1) determines whether or not a claim should be dismissed for lack of subject-matter jurisdiction. "'A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears.'" *A-Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (quoting *Stevedoring Servs. of Am., Inc. v. Eggert*, 953 F.2d 552, 554 (9th Cir. 1992)). "When subject matter jurisdiction is challenged under Federal Rule of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

---

[2] The California Attorney General is yet to make a decision on intervention in this matter. As a result, Brodale should not be allowed to proceed with his California FCA claim. Cal. Gov't Code § 12652(c)(4) (requirement that Attorney General make decision on whether or not to intervene). Nevertheless, Brodale's California FCA claim, like his federal FCA claim, fails for the reasons set forth below.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules tests the legal sufficiency of the claims in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In considering a motion to dismiss under Rule 12(b)(6), courts must accept as true the material factual allegations of the complaint and construe them in the light most favorable to the nonmoving party. *Id.* Courts, however, "are not bound to accept as true 'a legal conclusion couched as a factual allegation,'" and the claim in the complaint must be factually supported and plausible on its face to survive a Rule 12(b)(6) motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). *See also Doe v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 & 683 (9th Cir. 2009) (court "need not accept . . . unwarranted conclusion[s]"; rather, plaintiff must provide "factual allegation[s] stated with . . . specificity").

Rule 9(b) applies to FCA cases as well. *Bly-Magee*, 236 F.3d at 1018 ("The FCA is an anti-fraud statute. As such, we hold that complaints brought under the FCA must fulfill the requirements of Rule 9(b) . . . .") (citations omitted). Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) "serves not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect defendants from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis." *Bly-Magee*, 236 F.3d at 1018 (internal quotations omitted). A relator must allege the "'who, what, when, where and how'" of the alleged fraud under Rule 9(b). *Cleveland v. Deutsche Bank Nat'l Trust Co.*, No. 08-cv-0802 JM (NLS), 2009 U.S. Dist. LEXIS 7165, at *9 (S.D. Cal. Feb. 2, 2009) (Miller, J.) (quoting *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

## IV.   ARGUMENT

### A.   Brodale's FCA Claims Are Barred By The FCA's First-To-File Provision

The first reason why Brodale's FCA claims should be dismissed is because they are barred by the FCA's "first-to-file" provision. 31 U.S.C. § 3730(b)(5) (federal first-to-file provision); Cal.

Gov't Code § 12652(c)(10) (California first-to-file provision).[3]  The first-to-file provision is jurisdictional, requiring dismissal under Rule 12(b)(1) (or Rule 12(b)(6)) of any claims that it precludes.  *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189-90 (9th Cir. 2001) (dismissing on jurisdictional grounds); *City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.*, 109 Cal. App. 4th 1668, 1677 (2003) (same).  *See also Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 (10th Cir. 2004) (stating first-to-file rule is a "jurisdictional limit").

The first-to-file provision states, "no person other than the Government may . . . bring a related action based on the facts underlying [a] pending [*qui tam*] action."  31 U.S.C. § 3730(b)(5).  *See also* Cal. Gov't Code § 12652(c)(10) ("no other person may bring a related action based on the facts underlying the pending action").  To fall within this rule, an action need not assert facts identical to those in a prior complaint.  *Lujan*, 243 F.3d at 1188-89.  Rather, it need only "alleg[e] the same material elements of fraud described in an earlier suit."  *Id.* at 1189.  Or, in other words, the latter action need only "raise[] the same or a related claim based in significant measure on the core fact or general conduct relied upon in the first *qui tam* action."  *Grynberg*, 390 F.3d at 1279.  The purpose of the first-to-file provision is to prevent duplicative *qui tam* suits once an earlier complaint has been filed and placed the government on notice of the alleged fraud.  *Lujan*, 243 F.3d at 1187; *see also United States ex rel. St. John Lacorte v. Smithkline Beecham Clinical Labs.*, 149 F.3d 227, 234 (3d Cir. 1998).  Once the government has been placed on notice, it can investigate the allegations, and no further actions need be filed to alert the government to the claims or otherwise protect the government's interests.  *St. John Lacorte*, 149 F.3d at 234.

Here, Brodale's FCA action is clearly a "related" action and "based on the facts underlying" the pending and earlier-filed *Hendow qui tam* action.  In this action, like in the *Hendow* action, Brodale alleges that the University committed fraud against the government.  *Compare* Compl. ¶¶ 45,

---

[3]  "California's FCA is patterned on [the] similar federal statutory scheme."  *California ex rel. Grayson v. Pac. Bell Tel. Co.*, 142 Cal. App. 4th 741, 746 n. 3 (2006) (quotation marks omitted).   As a result, and "[g]iven the very close similarity of California's act to the federal act, it is appropriate to turn to federal cases for guidance in interpreting the [California] act."  *Id.* (quotation marks omitted).

48, *with* RJN Ex. A ¶¶ 45, 48. In this action, like in *Hendow*, Brodale alleges that the fraud related to student financial aid requests. *Compare* Compl. ¶ 17, *with* RJN Ex. A ¶ 1. And in this action, like in *Hendow*, Brodale even alleges that the cause or root of this purported "fraud" was the compensation of employees at the University and the University's purported direction to its employees to stop reviewing the qualifications of students. *Compare* Compl. ¶¶ 17-18, *with* RJN Ex. A ¶¶ 16-17, 38. The following chart demonstrates this extensive overlap:

|  | *Hendow* Action | Instant Action |
|---|---|---|
| **Allegation that University committed "fraud" on the government** | "Defendants defrauded the United States . . . by knowingly presenting . . . a false and fraudulent claim for payment . . . to the damage of the treasury of the United States of America." RJN Ex. A ¶ 45. | "Plaintiff alleges that the actions and omissions of the enrollment and financial aid counselors . . . were in violation of federal law, designed to defraud the federal governments by and through the presentation of false claims." Compl. ¶ 45; *see also id.* ¶ 48. |
| **Allegation that "false claims" related to student financial aid requests** | "Defendant [defrauded the government] of federal student financial aid funds." RJN Ex. C (*Hendow* Sec. Am. Compl.) ¶ 1.<br><br>"Educational institutions request Title IV funds for eligible students through several programs, including the Federal Pell Grant Program, the Federal Supplemental Educational Opportunity Program, the Federal Perkins Loan Program and the Federal Family Educational Loan Program." *Id.* ¶ 23. | Defendants "encourage and facilitate the falsification of federal financial aid documents." *Id.* ¶ 17.<br><br>"Plaintiff alleges that defendant . . . violated the [FCA] by presenting false claims . . . in violation of . . . those provisions related to Federal Pell Grants, Federal Perkins Loans, and William D. Ford Federal Direct Loans." *Id.* ¶ 46. |
| **Allegation that "fraud" was rooted in how enrollment counselors were paid** | The University "compensates enrollment counselors, including Relators, based directly upon enrollment activities." *Id.* ¶ 17. | "In encouraging . . . illegal activities, Plaintiff alleges that [the University] paid enrollment counselors based on their enrollment activities . . . ." *Id.* ¶ 17. |

|  | *Hendow* Action | Instant Action |
|---|---|---|
| **Allegation that "fraud" was rooted in how enrollment counselors were paid (cont.)** | The University "publishes charts (called matrix) setting forth the enrollment activity numbers necessary for a performance rating . . . .  The top ranking counselors . . . receiv[e] . . . incentive trips, awards and gifts based on their enrollment numbers." *Id.* ¶ 17. | The University "[e]nroll[ed] students using internal enrollment quotas and sales promotions."  *Id.* ¶ 18(b). |
| **Allegation that "fraud" was rooted in management telling employees to disregard student qualifications** | "Corporate Enrollment urges enrollment counselors to enroll students without reviewing their transcripts to determine their academic qualifications to attend the university." *Id.* ¶ 18.  "Corporate Enrollment directed enrollment counselors to increase their enrollment numbers by disregarding potential students' qualifications to attend [the University]." *Id.* ¶ 53. | Employees were told to enroll students, "regardless of the financial qualifications of applicants or abilities of the applicants to complete their education." *Id.* ¶ 17.  The University "implement[ed] a policy . . . to 'not to deny any student enrollment for any reason,' thereby incentivizing enrollment counselors staff to perpetrate frauds against the government." *Id.* ¶ 18(c). |

Moreover, Brodale's FCA claims cannot be saved simply because Brodale may provide some additional details or allegations that are not included in the *Hendow* action.  The material elements of the alleged fraud – that the University committed fraud in connection with student financial aid requests due to the compensation of enrollment counselors and directions from management – was asserted in the prior action, and the government was thereby placed on sufficient notice.  *Lujan*, 243 F.3d at 1189 (complaint barred "regardless of whether the allegations incorporate somewhat different details"); *see also Grynberg*, 390 F.3d at 1279-80 & n.4 (complaint barred when it merely provided additional examples of how previously-alleged fraudulent scheme was carried out).  *Cf. United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 218-19 (D.C. Cir. 2003) (later complaint alleging different instances of fraud barred because it was "merely variations on the fraud [the original] complaint described").  Accordingly, Brodale's FCA claims are barred from proceeding and should be dismissed for lack of jurisdiction pursuant to Rule 12(b)(1).

### B. Brodale's FCA Claims Should Be Dismissed Under Rules 9(b) And 12(b)(6)

Brodale's FCA claims should also be dismissed because Brodale fails to allege that the University actually submitted any false claims in violation of the FCA. Indeed, Brodale's pleading on this front fails to satisfy the pleading requirements of both Rules 12(b)(6) and 9(b).

In essence, Brodale's allegations of "false claims" boil down to his contentions in paragraphs 46 and 49 of his Complaint that the University presented false claims because it presented claims "in violation of . . . [the Higher Education Act,] 20 U.S.C. section 1001 *et seq.*," the "provisions related" to various financial aid programs, "the *Needs Analysis* requirements," the "requirements set forth by the California Education Code," and the "provisions related to state Cal-Grants." Compl. ¶¶ 46, 49. Brodale's claims fall far short of meeting the pleading requirements. After all, Brodale does not even allege which among the many thousands of laws in these "provisions" the University actually violated. *See, e.g.*, *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, No. 96-1380, 1999 U.S. Dist. LEXIS 13036, at *30 (E.D. La. Aug. 20, 1999) (dismissing FCA claims because relator "cites no statute or regulation imposing the obligation it asserts defendant has breached").

Similarly, Brodale does not provide any details in support of these vague and general allegations. He does not allege, for instance, exactly how the University violated each or any of these "provisions," the specific names of people who purportedly engaged in these "violations," where or when this conduct particularly occurred, or anything else. Such vague and conclusory allegations meet the requirements of neither Rule 12(b)(6) nor Rule 9(b). *See, e.g.*, *Iqbal*, 129 S. Ct. at 1949-50 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"; rather, a court must determine whether the complaint pleads facts in support of the claims asserted); *see also United States ex rel. Bott v. Silicon Valley Colls.*, No. 06-15423, 262 Fed. Appx. 810, 2008 WL 59364, at *1 (9th Cir. Jan. 4, 2008) (relator must assert violations of FCA with

"particularity" required by Rule 9(b) and to the extent relator fails to do so, case should be dismissed).[4]  For this reason, Brodale's FCA claims should be dismissed.

Perhaps recognizing this, Brodale then includes – in paragraphs 17, 18, and 38 of his Complaint – additional vague and conclusory allegations regarding the "falsification" of financial aid documents and "coaching prospective and active students to lie."  These allegations, however, also fail to satisfy Rule 9(b) because Brodale does not come remotely close to alleging the required "who, what, when, where, and how" with respect to these allegations.  *Cleveland*, 2009 U.S. Dist. LEXIS 7165, at *9 ("Courts have . . . phrased the heightened pleading standard [under Rule 9(b)] as requiring 'the who, what, when, where, and how of the misconduct charged.'") (quoting *Vess*, 317 F.3d at 1106).  *See also Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (noting Rule 9(b) requires allegations of fraud to "state the time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation").[5]  For example:

Who:  Brodale alleges that unidentified "enrollment counselors" and unidentified "financial aid counselors" falsified documents for unidentified "prospective and active students."  Brodale does not identify even one of the tens of thousands of University employees that he alleges engaged in this conduct, nor one of the hundreds of thousands of students whose information he claims was actually falsified.  Instead, we are left to guess who these employees are and who the students are.  This is utterly insufficient under Rule 9(b).  *See, e.g.*, *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (noting insufficiency of complaint under Rule 9(b) where it

---

[4]  *Bott* is particularly instructive, as there the Ninth Circuit dismissed a *qui tam* case filed by a relator against an educational institution for the same reason urged by the University here – that the relators had not adequately alleged that the school committed any underlying violation of the law.  *Bott*, 262 Fed. Appx. 810, 2008 WL 59364, at *1.

[5]  Indeed, they are precisely the type of vague, unspecific allegations that courts have stated defendants need to be protected against in FCA cases.  *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006) (stating that Rule 9(b)'s vigilant application is especially important in FCA cases because "of the quasi-criminal nature of FCA violations" and the strong financial incentive that exists for relators to file "frivolous suits").

failed to "identify the [defendant's] employees who performed the [allegedly fraudulent laboratory] tests"). Indeed, it is precisely contrary to one of the main purposes of Rule 9(b) – providing the defendant sufficient notice and not allowing a relator to proceed to discovery with no evidence and based upon vague and conclusory assertions. *See Bly-Magee*, 236 F.3d at 1018-19; *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996).

What: Similarly, Brodale's meager allegations regarding "what" the purported conduct consisted of are woefully inadequate. He simply contends in conclusory fashion, for instance, that "all other employees of the Apollo Group involved [sic] similar financial and legal improprieties." Compl. ¶ 17. He does not allege what these "similar" financial and legal "improprieties" are or why he believes that they were engaged in by all other Apollo employees. Likewise, Brodale provides absolutely no details or other allegations in support of his vague and conclusory claim that the purported misconduct – whatever it was – was "encouraged, authorized and ratified by the Apollo Group." *Id.* Similarly, Brodale provides no details in support of his vague and general claims that "counselors forg[ed] signatures" or "encourag[ed] students to enroll without adequate financial aid to only later pressure these students to apply for additional federal, state, and private loans and grants." *Id.* ¶ 18(c). This vagueness permeates Brodale's allegations.[6]

When & Where: Brodale's claims also fall far short of providing the required "when" or "where" of the alleged fraud. Brodale does not identify, for instance, when any alleged false claim was submitted to the government for payment. Similarly, he does not come close to identifying at which of the University's over 200 campuses he contends the "improprieties" occurred. Instead, he simply alleges that "all other employees of Apollo" engaged in this conduct. This, of course, is

---

[6] Moreover, these allegations – like the other ones in Brodale's Complaint – do nothing to indicate that there was actually "fraud" against the government. That is, Brodale has not – and cannot – allege that through any of this conduct, a student otherwise ineligible for financial aid somehow received funding from the federal government. Rather, these allegations are just as consistent with there being harmless error – for example, where an employee signed a form that would otherwise have been signed by a student. This cannot constitute the basis for a claim of "fraud" under the FCA. *Iqbal*, 129 S. Ct. at 1949 (to survive a motion to dismiss, there must be "more than a sheer possibility that a defendant has acted unlawfully").

1  utterly insufficient.  *Bly-Magee*, 236 F.3d at 1019.  *See also Lee*, 245 F.3d at 1051 (noting
2  insufficiency of complaint under Rule 9(b) where relator failed to "provide any dates, times, or places
3  [allegedly fraudulent laboratory tests] were conducted"); *United States ex rel. McCoy v. Cal. Med.*
4  *Rev., Inc.*, 723 F. Supp. 1363, 1372 (N.D. Cal. 1989) (finding Rule 9(b) met where complaint, among
5  other things, provides dates of the alleged fraud).

6        How:  And finally, and perhaps most critically, Brodale does not allege any facts indicating
7  "how" any of the conduct that he purports to put at issue actually resulted in the submission of a false
8  claim for payment to the government.  He does not allege, for instance, even a single instance of a
9  student who received more in financial aid than he was entitled to as a result of the University's
10 alleged improper conduct, or received aid when the student should not have received any aid in the
11 first place.  Brodale has not – and cannot – identify even one situation where he believes that the
12 University made a false claim for payment.  And he certainly has not identified one with the
13 particularity required by Rule 9(b).  This dooms his claims as well.  *See, e.g., Twombly*, 550 U.S. at
14 555 (a complaint must "raise a right to relief above the speculative level" to survive a motion to
15 dismiss).  In the absence of specific allegations related to the nature of these false claims, Brodale
16 fails to give the University proper notice, and attempts to proceed to discovery – and cost the
17 University and the Court a tremendous amount of resources – based upon unpled claims.  Such a
18 result is precisely what Rule 9(b) intends to prohibit.  *See e.g.*, *Bly-Magee*, 236 F.3d at 1018 (Rule
19 9(b) "prohibit[s] plaintiffs from unilaterally imposing upon the court, the parties and society
20 enormous social and economic costs absent some factual basis.") (internal quotations omitted).

21       **C.**    **Brodale Failed To Comply With The FCA's Procedural Requirements**
22       Finally, Brodale's FCA claims should be dismissed because Brodale failed to follow the
23 FCA's procedural requirements.  Both the federal and state FCA require that a relator file his *qui tam*
24 complaint under seal, and – prior to or simultaneous with filing the action – provide the government a
25 copy of the complaint and a disclosure statement detailing the facts and evidence in support of the
26 relator's claims.  31 U.S.C. § 3730(b)(2); Cal. Gov't Code § 12652(c)(2)-(3).  These procedural
27 requirements are fundamental, and they are intended to provide the government with an opportunity
28 to investigate the allegations while the case is under seal without alerting the defendant to the

1  investigation. *Erickson ex rel. United States v. American Inst. of Biological Scis.*, 716 F. Supp. 908,
2  912 (E.D. Va. 1989). Indeed, a relator's "failure to comply with the[se] statutory procedural
3  provisions 'irreversibly frustrate[s] the congressional goals underlying th[ese] provisions.'" *United*
4  *States ex rel. Summers v. LHC Group, Inc.*, No. 3:09-cv-277, 2009 U.S. Dist. LEXIS 48922, at *13
5  (M.D. Tenn. June 11, 2009) (quoting *Erickson*, 716 F. Supp. at 912).

6  Consequently, the punishment for failing to comply with these procedural requirements is the
7  dismissal of the *qui tam* action with prejudice as to the relator (but without prejudice as to the
8  government). *Id.* at *12-23; *accord United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d
9  995, 997 (2d Cir. 1995) (finding that failure to comply with procedural requirements "incurably
10 frustrate[s]" the interests protected by statute, and dismissing complaint due to such failure);
11 *Erickson*, 716 F. Supp. at 910 (same). "[T]he presence or absence of bad faith on the part of the
12 relator [with respect to this question] is simply not material." *Summers*, 2009 U.S. Dist. LEXIS
13 48922 at *18. *But see United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir.
14 1995) (finding that where procedures are followed, but relator's counsel fails to abide by seal, a
15 balancing test is appropriate).

16 Here, Brodale indisputably failed to follow these procedural requirements. Brodale's original
17 complaint was not filed under seal. *See* Docket Nos. 1-4. Rather, it was publicly filed. *Id.*
18 Moreover, Brodale did not provide the government a copy of his complaint or a copy of a disclosure
19 statement prior to or at the time of filing his action. *Id.* Indeed, Brodale was so delinquent with
20 respect to these procedural requirements that the U.S. Government had to file an *ex parte* application
21 on October 30, 2008 requesting that the statutory time period for the U.S. to make an intervention
22 decision be tolled. Docket No. 5. In that motion, the U.S. explicitly stated that Brodale had not yet
23 served the U.S. with a copy of his complaint, as required by the law, and had not served the
24 government with a written disclosure statement, as also required. *Id.*

## V. CONCLUSION

For the reasons set forth above, Brodale's remaining, FCA causes of action should be dismissed. These causes of action are jurisdictionally barred by the FCA's first-to-file rule, fall woefully short of meeting the pleadings requirements of Rules 12(b)(6) and 9(b), and are procedurally infirm.

DATED: September 14, 2009

    GIBSON, DUNN & CRUTCHER LLP
    TIMOTHY J. HATCH
    JAMES L. ZELENAY, JR.

    SNELL & WILMER LLP
    CHRISTY JOSEPH
    BRIAN MILLS

    By:   /s James L. Zelenay, Jr.

    Attorneys For Defendant,
    Apollo Group, Inc. d/b/a University of Phoenix