1

2

3

4

5

6

7

8        **UNITED STATES DISTRICT COURT**

9        **SOUTHERN DISTRICT OF CALIFORNIA**

10

11   UNITED STATES OF AMERICA, the          CASE NO. 08 CV 1399 JM
     STATE OF CALIFORNIA, and                (WMC)
12   STEPHEN LEE BRODALE, an
     individual,                             **ORDER GRANTING**
13                                           **DEFENDANT'S MOTION TO**
                          Plaintiff,         **DISMISS THE FOURTH AND**
14         vs.                               **FIFTH CAUSES OF ACTION**
                                             **OF COMPLAINT**
15
                                             Doc. No. 18
16   APOLLO GROUP, INC., a California
     Corporation, d/b/a/ UNIVERSITY OF
17   PHOENIX; and KIM SAVICH,
     KYAN FLYNN, JENNIFER BRODIE,
18   and MATT JOHNSTON, as
     individuals and agents of APOLLO
19   GROUP, INC., and DOES 1-50,
     inclusive,
20
                          Defendants.

21         On August 1, 2008, qui tam relator, Plaintiff Stephen Brodale, filed this

22   complaint on behalf of the United States and the State of California against Defendant

23   Apollo Group, Inc, its subsidiary University of Phoenix, and individual employees, Kim

24   Savich, Kyan Flynn, Jennifer Brodie, and Matt Johnston.  Brodale alleges six causes of

25   action, four of which have been submitted to arbitration.  The remaining two counts,

26   counts four and five, are qui tam whistleblower claims.  Count four was brought as a

27   qui tam action claiming violations of the Federal False Claims Act ("FCA"), 31 U.S.C.

28   § 3729.  Count five was brought as a state qui tam action claiming violations of

California Government Code § 12650.

On September 14, 2009, Defendant moved to dismiss counts four and five based on the following three reasons: (1) counts four and five are jurisdictionally barred by the FCA's first-to-file rule, (2) Plaintiff failed to comply with particularity requirements of Federal Rules of Civil Procedure ("FRCP") 12(b)(6) and 9(b), and (3) Plaintiff failed to satisfy the procedural filing requirements associated with FCA claims.

On October 8, 2009, Plaintiff responded to Defendant's motion to dismiss asserting that (1) counts four and five are not sufficiently related to a pending qui tam action as to be jurisdictionally barred by the first-to-file rule, (2) the complaint does allege facts sufficient to satisfy the particularity requirements of Rule 12(b)(6) and Rule 9(b), and in the alternative he should be given the opportunity to amend, and (3) he complied with FCA's procedural requirements.

The court finds this matter appropriate for decision without oral argument. *See* CivLR 7(d)(1). For the reasons set forth below, the court **GRANTS** Defendant's motion to dismiss counts four and five.

## I.    BACKGROUND

On September 1, 2004, Stephen Brodale was hired as Director of Financial Services by Apollo Group, Inc. to oversee the financial aid department of the University of Phoenix's ("University") San Diego campus. (Compl. ¶ 14). Brodale alleges that the University's Director of Enrollment, Kyan Flynn and the Senior Director of Finance, Jennifer Brodie, acted illegally and fraudulently, at the direction of Campus Directors, Kim Savich and Matt Johnston, as well as the University itself, to encourage and facilitate the falsification of federal financial aid documents for prospective and current students. (Compl. ¶ 17). Brodale alleges that the actions of the University's employees were authorized and ratified by the Apollo Group, Inc. ("Apollo") as owner and operator of the University. *Id.* Brodale claims that Apollo paid enrollment counselors based on their enrollment activities regardless of the financial qualifications of applicants or the ability of applicants to complete their education. *Id.* This incentive

or commissioned based pay system encouraged employees to engage in illegal fraudulent activities in order to gain increased pay and to maintain their jobs.

In or about August or September 2006, Brodale began complaining to the University about the fraudulent and illegal actions of the enrollment staff. (Compl. ¶ 18). Brodale's complaints included evidence of staff coaching prospective and active students to lie about their income and number of dependants on their financial aid applications, to change their income, and in some cases fraudulently completing the forms themselves and forging student signatures. *Id.*

Brodale further alleges that the University responded to his allegations by writing him up, giving him poor performance reviews, orchestrating fraudulent evaluations, demanding unrealistic performance expectations, and generally conspiring to terminate him. (Compl. ¶ 19). Brodale claims that the conspiracy on the part of the University and Apollo to terminate him was retaliation for his blowing the whistle on the improprieties of the enrollment department. (Compl. ¶ 20).

On January 14, 2008, Brodale was terminated by the University. *Id.* Thereafter, on August 1, 2008, Brodale filed this complaint against Apollo Group, Inc., University of Phoenix, and the individually named defendants.

## II.   DISCUSSION

The False Claims Act imposes liability upon those who submit a false or fraudulent claim for payment to the United States Government. 31 U.S.C. § 3729(a); *Campbell v. Redding Medical Center,* 421 F.3d 817, 820 (9th Cir. 2005). The qui tam provisions of the False Claims Act encourage private parties, referred to as "relators," who are aware of fraud being perpetuated against the government to sue for a civil penalty on behalf of the government. 31 U.S.C. § 3730(b)(1). Once the complaint is served on the government, within 60 days, the government must elect to either proceed with the action itself, or notify the court that it declines to take over the action, in which case the relator has the right to pursue the action. 31 U.S.C. § 3730(b)(4).

### A.   Count Four Should be Dismissed Pursuant to the First-to-File Rule

1    Plaintiff's FCA claim is dismissed under FRCP Rule 12(b)(1) as jurisdictionally

2    barred by the FCA's "first-to-file" rule.  Brodale asserts allegations already the subject

3    of the pending qui tam action *United States ex rel. Hendow v. University of Phoenix,*

4    Case No. 03-0457-GEB-DAD (E.D. Cal., filed Mar. 7, 2003) ("*Hendow*").  *See* Def.

5    RJN Exhs. A-C .

6             **1.      Legal Standard**

7    Qui tam actions are limited by what is referred to as the "first-to-file" bar.  31

8    U.S.C. § 3730(b)(5).  According to Section 3730(b)(5), "when a person brings a [qui

9    tam] action, no person other than the Government may intervene or bring a related

10   action based on facts underlying the pending action."  *See also Redding Medical*

11   *Center,* 421 F.3d at 821.   Section 3730(b)(5)'s plain language unambiguously

12   establishes an "exception-free" first-to-file bar, preventing successive plaintiffs from

13   bringing related actions based on the same underlying facts.  *U.S. ex rel. Lujan v.*

14   *Hughes Aircraft Co.* 243 F.3d 1181, 1187 (9th Cir. 2001).  The first-to file provision

15   is jurisdictional, requiring dismissal under Rule 12(b)(1) or 12(b)(6) of any claims it

16   precludes.  *Id.* at 1189-90.

17   To fall within this rule, an action need not assert facts identical to those in the

18   prior complaint.  *Id.* at 1188-1189 (establishing the material facts, not identical facts,

19   test should be used to determine if a related action was based on facts underlying

20   pending action for purposes of FCA).  Rather, the current action need only "allege the

21   same material elements of fraud described in an earlier suit." *Id.* at 1189 (holding that

22   facts which were similar, but not identical, to facts alleged in prior qui tam action

23   against same defense contractor by a different former employee were sufficient to form

24   the basis of dismissal of another employee's qui tam as a "related action" under first-to-

25   file provision).

26   In rejecting an identical facts test, the court in *Lujan* based its finding on similar

27   conclusions reached by most of the few federal courts that have addressed section

28   3750(b)(5).   The court noted that the cases' common principal is that "section

3750(b)(5) precludes a subsequent relator's claim that alleges the defendant engaged in the same type of wrongdoing as that claimed in a prior action even if the allegations cover a different time period or location within the company." *Id.* (quoting *United States ex rel. Capella v. United Technologies Corp.,* 1999 WL 464536, at 9 (D. Conn. June 3, 1999)). In *Lujan* the court further explained that the application of a narrow identical facts test would be contrary to the statute's plain language and legislative intent. Such a test would encourage piggyback claims that would provide no additional benefit to the government, "since once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds." *Id.* (quoting *U.S. ex rel. La Corte v. SmithKline Beecham Clin. Laboratories, Inc.*, 149 F.3d 227, 234 (3d Cir. 1998)).

## 2.    Analysis

Brodale's FCA action asserts the same material elements of fraud as the pending *Hendow* action. The gravamen of both Brodale's complaint and the *Hendow* action is financial aid fraud. Both actions focus on Defendants' alleged use of employee compensation incentives (bonuses, increased salary, promotions) to encourage its employees to enroll as many students as possible for the purpose of defrauding the federal financial aid system.

First, Brodale's action is based on the same type of wrongdoing (fraud against the government) as alleged in the *Hendow* action. In other words, the *Hendow* action and the Brodale action do not allege two different fraudulent schemes that would give rise to separate and distinct recovery. The measure of damages in both actions would be the same: the dollar amount of federal financial aid funds obtained fraudulently. Second, both actions claim fraud related to student financial aid requests. Both *Hendow* and Brodale must show the same material facts to establish the "falsity" element of FCA violations alleged in their respective complaints. That is, both must show that the University provided false or fabricated information on federal financial aid forms. Third, both actions allege that the purported fraud stems from University's management

1 encouraging employees to ignore and/or falsify student applicant's qualifications for

2 financial aid.

3          While the *Hendow* action claims violations of Title IV of the Higher Education

4 Act's ("HEA") incentive compensation ban and the Brodale action does not specifically

5 invoke the HEA and alleges somewhat different conduct, this distinction is of no

6 consequence.  Both actions allege that the University encouraged fraud against the

7 government in the form of false financial aid requests, through incentive compensation.

8 Indeed, Brodale's complaint alleges Plaintiffs "encourag[ed] and facilitat[ed] the

9 falsification of federal financial aid documents for the prospective students" and "paid

10 enrollment counselors based on their enrollment activities, regardless of the

11 qualifications of applicants or abilities of applicants to complete their education."

12 (Compl. ¶ 17).  This is the exact conduct alleged in the *Hendow* complaint which states,

13 "Corporate Enrollment directed enrollment counselors to increase their enrollment

14 numbers by disregarding potential students' qualifications" in order to obtain federal

15 funds. (Doc. No. 18, Def. Motion Exh. 5, ¶ 17, 53).  Finally, Brodale's claim does not

16 add anything new or useful to the *Hendow* claim such that it should not be considered

17 parasitic to the previously filed action.  *See Capella,* at 11.

18          The material elements of the alleged fraud in both actions are not only related but

19 are nearly identical.  Thus, the government was placed on sufficient notice of the

20 allegations against it with the filing of the *Hendow* action meaning Brodale's FCA

21 claim is repetitive and barred by the first-to file rule.  Accordingly, count four is

22 dismissed for lack of subject matter jurisdiction pursuant to FRCP Rule 12(b)(1).

23          **B.      Count Five Barred for Lack of Jurisdiction**

24                  **1.      Legal Standard**

25          California's FCA is patterned after the similar federal statute.  *See* Cal. Gov.

26 Code § 12650.  Like the federal FCA, California's statute also contains a first-to-file bar

27 on successive qui tam actions.  According to California's first-to-file provision, "no

28 other person may bring a related action based on the facts underlying the pending

1    action." Cal. Gov. Code § 12653(c)(10).

2         **2.    Analysis**

3         In count five, Brodale alleges Defendants defrauded the State of California by

4    falsifying state financial aid requests for state funded student loans and grant programs.

5    The pending *Hendow* qui tam action, however, does not include claims of fraud against

6    the State of California.  Therefore, the state qui tam claims alleged in Brodale's action

7    do not relate to the FCA claims asserted in *Hendow*.  Likewise, the State of California

8    would not have been alerted to Defendant's fraudulent activity through the *Hendow*

9    action.  Thus, count five is not barred by the California's first-to-file rule.

10        Plaintiff's state claim is, however, barred for lack of jurisdiction. Although

11   Plaintiff asserts that this court has jurisdiction based on federal diversity jurisdiction,

12   his contention is incorrect.  The first requirement for diversity jurisdiction is that the

13   parties to the controversy be completely diverse. *See* 28 § U.S.C. 1332(a)(1). Here,

14   both Brodale and Apollo are residents of the State of California.  For purposes of

15   diversity jurisdiction, a corporation is deemed a citizen of any state where it has been

16   incorporated. 28 U.S.C. § 1332(c)(1).  Apollo is a California corporation registered as

17   such with the California Secretary of State, number C1690019. (Compl. ¶ 4).  There

18   is no dispute that Brodale is a citizen of the State of California.  (Compl. ¶ 3).

19   Accordingly, the parties are not entirely diverse for purposes of maintaining an action

20   in federal court based on diversity jurisdiction.  Likewise, because the state action is

21   based on violations of California law (Ca. Ed. Code § 69431) there is no basis for

22   federal question jurisdiction. *See* 28 U.S.C. § 1331.  Therefore, count five must be

23   dismissed for lack of jurisdiction.

24   ///

25   ///

26   ///

27   ///

28   ///

1    **III.    CONCLUSION**

2         Based on the foregoing reasons, the court hereby **GRANTS** Defendants' motion

3    to dismiss counts four and five.  The Clerk of the Court is directed to close the file.

4         **IT IS SO ORDERED.**

5

6    **DATED:  November 6, 2009**

7    _____

8    **Hon. Jeffrey T. Miller**
     **United States District Judge**

9    cc:          All parties

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 8 -                                             08cv1399